**FILED**

9/11/2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

AO 91 (Rev. 11/11) Criminal Complaint                    AUSA Anne Yonover (312) 886-2038

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA

v.

IBIS TESTA-NUNEZ

CASE NUMBER:  25CR564

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about September 10, 2025, at Glenview, in the Northern District of Illinois, Eastern Division, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | possessed with intent to distribute a controlled substance, namely, a mixture and substance containing a detectable amount of cocaine |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

*Jamal Muaref*

JAMAL MUAREF
Task Force Officer, Drug Enforcement Administration (DEA)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: September 11, 2025

*Laura K. McNally*
*Judge's signature*

City and state: Chicago, Illinois

LAURA K. MCNALLY, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

**AFFIDAVIT**

I, JAMAL MUAREF, being duly sworn, state as follows:

1.      I am a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), and have been so employed with the DEA since approximately June 2023.   My current responsibilities include the investigation of narcotics trafficking offenses. Prior to working as a TFO with the DEA, I spent 9 years at the Calumet City Police Department, working as a Patrol Officer, Evidence Technician, and Investigator.

2.      This affidavit is submitted in support of a criminal complaint alleging that IBIS TESTA-NUNEZ has violated Title 21, United States Code, Section 841(a)(1).   Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging TESTA-NUNEZ with possession with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3.      This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents, law enforcement members, law enforcement databases and reports, and witnesses.

## I. FACTS SUPPORTING PROBABLE CAUSE

### A. Background of Investigation

4.      On or about August 6, 2025, DEA Special Agent Zachary Gray and I met with a source of information ("SOI") at a predetermined location.[1] During the meeting, the SOI placed a recorded phone call in the presence of SA Gray and myself to an individual using telephone number 224-433-9669 (the "9669 Phone") via WhatsApp. I believe TESTA-NUNEZ was the user of the 9669 Phone. Based on law enforcement databases, TESTA-NUNEZ was arrested on December 19, 2019, for possession with intent to distribute approximately one kilogram of cocaine. At the time of the arrest, the 9669 Phone was listed in the arrest paperwork for TESTA-NUNEZ. TESTA-NUNEZ was deported following this arrest.

5.      Prior to the SOI placing the call to the 9669 Phone on or about August 6, 2025, law enforcement officers showed the SOI an unmarked photo of TESTA-NUNEZ. The SOI positively identified the individual in the picture as the individual the SOI knew as "Compa" and the user of the 9669 Phone. During the conversation on or about August 6, 2025, using coded language, the SOI told TESTA-NUNEZ that

---

[1] The SOI was approached by law enforcement in August 2025 regarding the SOI's involvement in a narcotics transaction that occurred in October 2023. The SOI provided information and assistance in the hopes of obtaining consideration regarding potential criminal charges that may be brought against the SOI. No promises have been made to the SOI. A criminal history inquiry for the SOI showed that the SOI was convicted of a misdemeanor DUI/Alcohol in April 2014 in the Circuit Court of Cook County. I believe the information provided by the SOI set forth in this affidavit is reliable because among other reasons, it has been corroborated in significant respects by consensually recorded conversations and other information described in this affidavit.

the SOI was going to send TESTA-NUNEZ a phone number of a friend who wanted to purchase kilograms of cocaine.[2] Shortly after the phone call, the SOI sent a WhatsApp message to TESTA-NUNEZ with a phone number and a name. The phone number belonged to an DEA Special Agent who was working undercover (the "UC"). Later that evening, TESTA-NUNEZ called the UC from the 9669 Phone.

**B. On or about August 12, 2025, the UC Met with Testa-Nunez and Obtained a Sample of Cocaine from Testa-Nunez**

6.      On or about August 11, 2025, the UC placed a recorded called to TESTA-NUNEZ on the 9669 Phone and the UC asked TESTA-NUNEZ if they could meet the following day on August 12, 2025. The UC and TESTA-NUNEZ agreed to meet on August 12, 2025, between approximately 1:00 p.m. and 1:30 p.m. Following the recorded call, TESTA-NUNEZ sent a pin by text message to the UC with the following address: Tacos El Durango Mexican Restaurant, 3900 Washington Street, in Gurnee, Illinois.

7.      On or about August 12, 2025, the UC traveled to the meeting location in Gurnee. The UC was equipped with an audio and video recording device. Shortly after

---

[2] The communications summarized in this affidavit do not include references to all topics covered during the course of the conversation. The summaries also do not include reference to all statements made by the speakers on topics described. All quotations are based on preliminary transcriptions of the conversations and the times listed are approximate. At various points, I have included interpretations of words and phrases. These interpretations are based on law enforcement officers' understanding of the conversations, which is based on the content and context of the conversations, their knowledge of the investigation as a whole, their experience and training, and the experience and training of other law enforcement officers in this investigation. The conversations quoted in this affidavit are in the Spanish language. For those communications, I have relied on draft, not final, Spanish-to-English translations of the conversations done by Spanish-speaking law enforcement officers and/or interpreters contracted by law enforcement officers.

the UC arrived at approximately 1:25 p.m.,[3] the UC sent a text message to TESTA-NUNEZ stating, "What kind of car are you coming in? I am in a Chevy truck with license plates from Wisconsin." TESTA-NUNEZ responded, "It's a Red Nissan Sentra. Did you arrive?"

8.      On or about August 12, 2025, at approximately 1:37 p.m., law enforcement officers conducting surveillance observed a 2009 Red Nissan Sentra VIN-3N1AB61EX9L616139 - Illinois License plate CC97665 registered to Tania Texta Nunez at 7166 W Belden Ave, Chicago, Illinois 60707 (the "**Subject Vehicle**") at 3900 Washington Street in Gurnee, Illinois.

9.      On or about August 12, 2025, at approximately 1:38 p.m., law enforcement officers conducting surveillance observed the **Subject Vehicle** pull next to the UC's vehicle at approximately 3900 Washington Street in Gurnee, Illinois. Law enforcement officers then observed a Hispanic male, who was later identified as TESTA-NUNEZ, exit the **Subject Vehicle** and enter the UC's vehicle. Using law enforcement databases, law enforcement officers observed a booking photo of TESTA-NUNEZ from his arrest in December 2019. Law enforcement officers compared this photo to the person who arrived and met with the UC and determined the person who met with the UC was TESTA-NUNEZ.

---

[3] The times listed in this affidavit are in Central Time, however, the recording device used by the UC lists the times of the calls and text messages in Eastern Time. Additionally, in a prior affidavit submitted on August 27, 2025, in support of a tracking warrant, Case No. 25 M 530, I stated that the UC arrived at the meeting location at approximately 1:25 p.m. and then sent the text message to TESTA-NUNEZ asking him about the car he was in. That text message was sent at approximately 1:23 p.m., a few minutes before the UC arrived at the meeting location.

10.     Based on my review of the recording of the meeting and the information provided by the UC, during the recorded meeting, TESTA-NUNEZ- provided the UC with a free sample of what appeared to be cocaine. Specifically, TESTA-NUNEZ provided the UC with a plastic baggie containing a white rock like substance, which field tested positive for cocaine. The UC asked TESTA-NUNEZ, "How much are they going for?" TESTA-NUNEZ stated, "I'm passing them at 17." Based on my training, experience, knowledge of the investigation, and my conversation with the UC, I understood TESTA-NUNEZ to be saying that he had access to and was able sell a kilogram of cocaine for approximately $17,000.

11.     Following the August 12, 2025 transaction, on or about August 19, 2025, TESTA-NUNEZ called the UC. During this recorded call, TESTA-NUNEZ asked the UC about the sample of cocaine that TESTA-NUNEZ had provided to the UC on August 12, 2025. Additionally, TESTA-NUNEZ indicated that he was willing to reduce the price for the kilogram of cocaine to $16,500.

12.     On or about August 26, 2025, TESTA-NUNEZ called the UC. This call was recorded. During the call, TESTA-NUNEZ discussed the purchase of one kilogram of cocaine with the UC. The UC indicated that the UC was out of town and would contact TESTA-NUNEZ when the UC was back in town.

## C. Testa-Nunez Attempts to Meet the UC on or about September 10, 2025, to sell the UC One Kilogram of Cocaine

13.     On or about September 10, 2025, the UC and TESTA-NUNEZ exchanged several text messages. On or about September 10, 2025, at approximately 3:36 p.m., the UC sent a text message to TESTA-NUNEZ stating, "Are you working?"

At approximately 3:39 p.m., the UC sent the following text messages to TESTA-NUNEZ, "Hey, I am sorry. I am back my uncle died. And I had to help my aunt for a few days. But I am back." At approximately 3:58 p.m., TESTA-NUNEZ stated, "Ok. Ok. [Thumbs up emoji] My cousin, my dear condolences." At approximately 3:59 p.m., the UC responded, "Thank you very much. And how are you? Are you still working?" TESTA-NUNEZ said, at approximately 4:17 p.m., "Yes, my cousin. I am here." The UC then stated, at approximately 4:18 p.m., "Ok what are you going to do? We gotta work, right? Ok. What time are you off?" The UC then sent another text at approximately 4:18 p.m., stating, "So you can give me a call please."

14.     On or about September 10, 2025, at approximately 4:00 p.m., law enforcement began surveillance at 200 Old Skokie Road, Park City, Illinois. Law enforcement knew this location to be TESTA-NUNEZ's place of employment based on prior surveillance.

15.     On September 10, 2025, at approximately 5:02 p.m., TESTA-NUNEZ called the UC. During this recorded call, the UC stated, "I have the 16, 5 [$16,500], and I am ready to buy one now [one kilogram of cocaine], and I will get two [two kilograms of cocaine] later after this one." TESTA-NUNEZ responded, "I am ready. You tell me when." The UC then asked, "Do I have to order it, or how do you want to do this?" TESTA-NUNEZ responded, "I already have a load that arrived. It's full right now. Whatever time you want to meet, just let me know." TESTA-NUNEZ then stated, "if you want to wait one to two hours we can meet then." The UC and TESTA-

NUNEZ agreed to meet at the Lake Forest Oasis to complete the drug transaction. TESTA-NUNEZ stated, "6, 6:30, I'll give you a call."

16.     At approximately 6:00 p.m., law enforcement observed TESTA-NUNEZ travel from 200 Old Skokie Road, Park City, Illinois, to 7166 W. Belden Avenue, Chicago, Illinois. At approximately 6:07 p.m., law enforcement observed TESTA-NUNEZ enter the residence at 7166 W. Belden Avenue, Chicago, Illinois. Law enforcement continued to conduct surveillance at 7166 W. Belden Avenue, Chicago, Illinois.

17.     At approximately 6:29 p.m., law enforcement observed an individual, later identified as TESTA-NUNEZ, enter a black Honda CRV located behind the residence at 7166 W. Belden Avenue, Chicago, Illinois. Law enforcement followed the black Honda CRV and approached the vehicle Law enforcement was able to identify the driver of driver of the vehicle as TESTA-NUNEZ.

18.     At approximately 6:34 p.m., the UC received a recorded phone call from TESTA-NUNEZ. During this call, TESTA-NUNEZ indicated that he was on his way to the meeting location. TESTA-NUNEZ further indicated that he was approximately 30 minutes from the meeting location. The UC stated, "I am in a Cadillac Escalade that is my wife's, it's black and has Wisconsin plates. Are you in the red car, I don't remember is it a Honda?" TESTA-NUNEZ responded, "No, no I am in a Honda CRV that is black."

19.     Law enforcement continued surveillance on TESTA-NUNEZ. At approximately 6:48 p.m., the Illinois State Police observed the black Honda CRV to

7

be speeding and then conducted a traffic stop on the black Honda CRV. During the traffic stop, the driver could not provide a driver's license. The Illinois State Police Trooper asked the driver to exit the vehicle. The driver then provided a Mexican identification card, in the name of Juan Testa, and the driver stated his name was Juan Testa. The driver stated he did not have an Illinois driver's license.

20.     The driver of the vehicle then gave the Illinois State Police consent to search his vehicle. Upon searching the vehicle, law enforcement officers found a black bag behind the rear driver side seat on the floorboard. Inside the bag was one brick shaped object, wrapped in plastic. This object was wrapped in brown paper packaging. Based on my training and experience, the wrapping and the shape of the object recovered from the back seat of the black Honda CRV was consistent with the packaging used for kilograms of narcotics.

21.     The driver of the black Honda CRV was then placed in custody. DEA law enforcement officers *Mirandized* the driver of the black Honda CRV, and he signed a pre-printed form waiving his *Miranda* rights and provided a post arrest statement. During the post arrest statement, the driver of the black Honda CRV told DEA law enforcement officers that his name was IBIS TESTA-NUNEZ.

22.     On or about September 11, 2025, the contents of the brick shaped object, wrapped in plastic recovered from TESTA-NUNEZ's vehicle on or about September 10, 2025, field tested positive for cocaine.

## II.   CONCLUSION

23.   Based on the foregoing, I respectfully submit that there is probable cause to believe that on or about September 10, 2025, IBIS TESTA-NUNEZ possessed with intent to distribute a controlled substance, namely, a mixture and substance containing a detectable amount of cocaine in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER AFFIANT SAYETH NOT.

JAMAL MUAREF
Task Force Officer, Drug Enforcement Administration

SWORN TO AND AFFIRMED by telephone September 11, 2025.

Honorable LAURA K. MCNALLY
United States Magistrate Judge

9